# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

ROSALYN NICOLE ROBERSON, )
)
                Plaintiff, )
)
v. ) Case No. CIV-12-427-RAW
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social )
Security Administration, )
)
                Defendant. )

## **OPINION AND ORDER**

Plaintiff Rosalyn Nicole Roberson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C.

§423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

Claimant was born on March 13, 1970 and was 39 years old on her alleged onset date of November 1, 2009. She met the insured status requirement of the Social Security Act through March 31, 2014. Claimant worked in the past as a nurse aid. Claimant alleges an inability to work beginning November 1, 2009 due to limitations resulting from systemic lupus disease ("SLE"), epidermolysis bullosa, asthma, headaches/migraines, polyarticular inflammatory arthritis, and hypertension.

**Procedural History**

On March 31, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On November 2, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") John W. Belcher in Tulsa, Oklahoma. On December 2, 2011, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on August 14, 2012. This court, however, reversed and remanded the decision for an evaluation of whether Claimant's impairments meet or equal listed impairments and, if necessary to obtain evidence from a medical expert to clarify the nature and severity of the Claimant's impairments. On January 10, 2013, the Commissioner filed an unopposed motion for remand pursuant to the sixth sentence of 42 U.S.C. § 405(g) based upon the fact that medical records pertaining to another individual had been included in the administrative records and had been relied upon by the ALJ in rendering his decision. The Appeals Council ordered that the ALJ address this

and other issues June 12,2013.

On September 16, 2014, ALJ John W. Belcher conducted a second hearing in Tulsa, Oklahoma. On June 18, 2015, he entered an unfavorable decision. The Appeals Council took no action to review the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b) and §416.967(b). He found that Claimant was able to lift and/or carry or push and/or pull twenty pounds occasionally and ten pounds frequently. Further, he found that Claimant was able to stand for six hours or walk for five hours in an eight-hour workday and sit six to eight hours in an eight-hour workday. Claimant could occasionally climb stairs but cannot climb ladders, ropes, or scaffolds. She could frequently bend or stoop and could occasionally kneel, crouch, and crawl. She could occasionally finger, handle and feel bilaterally. She could not have any sun exposure. The ALJ determined at step five that she could perform the light, unskilled jobs of bakery worker, furniture rental clerk, and security system monitor. (Tr. 9-10).

## Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to properly evaluate the opinion of Claimant's treating physician, Dr. Scott G. Lilly. Claimant began treatment with Dr. Lilly, a hematologist in March 2010 for progressive neck pain, right upper extremity neuropathic pain,

4

tension-type headaches, and progressive bilateral knee pain with an elevated, specked pattern antinuclear antibody ("ANA") titer. Historically, Claimant reported symptoms of a malar rash with hyperpigmentation, spontaneous bullous and vesicle formation on the soles of the feet, mild visual changes, episodic lapsed consciousness with a glazed appearance, tension headaches, chronic obstructive pulmonary disease ("COPD") with continued smoking, hypertension, right upper extremity neuropathy, mild exertional dyspnea, and mild vitiligo in the left lower extremity. Upon examination, Dr. Lilly found a Karnofsky performance score of about 80 percent, prolonged expiration with wheezing, 2/6 systolic ejection heart murmur, mildly decreased cervical mobility, mild right knee crepitus, and a miliary rash in a malar distribution and in the right preauricular area, and some lower extremity hypopigmentation with underlying erythema. (Tr. 525-526). Claimant had a negative test for antibodies pursuant to an ANA panel including anti-DNA and anti-Smith antibody testing. She did have an elevated erythrocyte sedimentation rate ("ESR") and c-reactive protein ("CRP") values. (Tr. 528, 532-533). Dr. Lilly assessed that clinical symptoms were consistent with systemic lupus erythematosus ("SLE") as well as blistering soles of the feet consistent with epidermolysis bullasa acquisita ("EBA") (Tr. 526) Continued treatment in 2010 by Dr. Lilly involved additional problems associated with a perirectal abscess, gastrointestinal complaints, neck and back pain, dysmorphopsia, and depression.

    Dr. Lilly completed a RFC Capacity Assessment on Claimant on February 8, 2011. He found Claimant met the diagnostic criteria for SLE which would interfere with her capacity for attention, concentration, stress tolerance, and occupational persistence and attendance (Tr. 596-599. Dr. Lilly found that Claimant would frequently need to take unscheduled breaks during an eight hour

workday. He anticipated the Claimant's impairments would cause her to be absent for work at least four times per month or more. He further stated that claimant had a marked decrease in the ability to do strong physical labor including walking distances and lifting two to ten pounds. (Tr. 596-599).

On January 7, 2014, Dr. Lilly completed a Physical Medical Source Statement. He determined Claimant had significant limitations in sitting, standing, walking, lifting, carrying, lower and upper extremity repetitive movements, postural maneuvers, and exposure to various environmental conditions. (Tr. 721-723).

In evaluating Dr. Lilly's opinion, the ALJ accorded them "little to no weight" because they were not supported by either the medical evidence or the testimony of the medical expert, Dr. Stephen Eppstein, who appeared by telephone. The ALJ stated that Dr. Epstein disagreed with Dr. Lilly"s opinion that the SLE questionnaire at Exhibit 13 noted cardiopulmonary involvement by pleurisy or low pericarditis. However, Dr. Eppstein saw no clinical report of pleurisy or low pericarditis in the record. He also noted that despite Dr. Lilly's references to Claimant's histories of hemolytic anemia, leukopenia, or lymphopenia, positive LE cell prep, anti-DNA, anti-Sm antibody, or false positive serum or syphilis testing for six months, and cardiopulmonary involvement by pleurisy or low pericarditis, the record did not support this conclusion. The ALJ also noted Dr. Eppstein opined that Claimant's reports of chest pain were contradicted by a normal ECG study, the record lacked evidence of Dr. Lilly's references to inflammatory and rheumatoid arthritis. The ALJ cited to Dr. Eppstein's opinion that Dr. Lilly's RFC assessment of Claimant's ability to perform less than sedentary work and work consistently without missing four days of work per month was not supported by the record. (Tr. 8-17)

6

A thorough review of the record contradicts the testimony of Dr. Eppstein that there was an absence of reports of inflammatory arthritis. (Tr. 6 ). Additionally, Dr. Eppstein dismissed Dr. Lilly's opinion that Claimant suffered from reduced mobility based on the absence of any radiological abnormalities without considering the presence of inflammation. This Court finds that Dr. Lilly's records consistently support a finding of inflammatory arthritis. (Tr. 601, 612,615,618,622)

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F. 3d 1297, 1300 (10th Cir. 2003 ). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted ). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors referenced in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) the consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the

ALJ's attention which tend to support or contradict the opinion. Id. At 1300-01 (quotation omitted ). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527 (d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004 (citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight. " Id. "Finally, if the ALJ rejects the opinion Completely, he must then give specific , legitimate reasons for doing so. Watkins, 350 F. 3d at 1301 (quotations omitted ).

This Court finds that the ALJ's rejection of the treating source opinion of Dr. Lilly is not supported by substantial evidence. On remand, the ALJ shall consider the weight to be attributed to the opinion of the treating source in light of all of the medical evidence in the record.

**Conclusion**

This Court finds that the ALJ's rejection of the treating source opinion of Dr. Lilly is not supported by substantial evidence and correct legal standards were not applied. Therefore, this Court finds the ruling of the Social Security Administration should be and is REVERSED and the matter REMANDED for further proceedings. On remand, the ALJ shall consider the weight to be attributed to the opinion of the treating source in light of all of the medical evidence in the record.

IT IS SO ORDERED this 26th day of September, 2016.

Ronald A. White
United States District Judge
Eastern District of Oklahoma